## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

CONNOR ANDERSON,    )
individually and on behalf   )
of similarly situated persons,  )
            )
     Plaintiff,    )
            )
v.           )  Docket No. 2:19-cv-00452-NT
            )
TEAM PRIOR, INC. and LEE PRIOR )
            )
     Defendants.   )

## ORDER ON JOINT MOTION TO REINSTATE CASE, FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT, AND ASSOCIATED RELIEF

This case concerns wages allegedly owed to Domino's Pizza delivery drivers under the Fair Labor Standards Act ("**FLSA**"), 29 U.S.C. §§ 201 *et seq.*, and Maine wage laws, 26 M.R.S. §§ 661 *et seq.* Before me is the parties' joint motion requesting that the Court reinstate the case following the order of dismissal entered on January 13, 2021, certify the proposed class action for settlement purposes, grant preliminary approval of the parties' proposed settlement, approve and authorize delivery of the proposed Class Notice of Proposed Class Action Settlement, and set a date for a final approval hearing. Joint Mot. to Reinstate Case, for Prelim. Approval of Settlement Agreement, and Associated Relief ("**Mot.**") (ECF No. 33).

For the reasons stated below, the parties' joint motion is GRANTED in part and DENIED in part without prejudice. Specifically, I grant the motion to reinstate the case. However, because certain items must be addressed before I can preliminarily approve the proposed settlement and conditionally certify the class, I

am denying without prejudice the motion for preliminary approval of the proposed settlement agreement, for conditional approval of the class, for approval and delivery authorization of the proposed settlement notice, and for a final fairness hearing date.

## BACKGROUND

The Plaintiff, Connor Anderson, brought suit on behalf of himself and all other similarly situated delivery drivers employed by Domino's Pizza franchises owned by Defendants Team Prior, Inc. and Lee Prior (collectively, the "**Defendants**"). First Am. Compl. ("**Compl.**") (ECF No. 21) ¶ 1. According to the Plaintiff, the Defendants' driver reimbursement policy violates the FLSA and Maine law because it fails to reasonably cover all of the drivers' expenses relating to their personal vehicle use, and these unreimbursed expenses cause the delivery drivers' wages to fall below the minimum wage. *Id.*

Specifically, the Complaint alleges that the Defendants required drivers like the Plaintiff to maintain their own safe, legally operable, and insured automobiles for pizza delivery, causing the delivery drivers to incur vehicle-related costs while driving for the primary benefit of the Defendants. Compl. ¶¶ 12–13. The Plaintiff alleges that the Defendants' per-delivery reimbursement policy, which applied to all their delivery drivers, resulted in a reimbursement that was below the IRS business mileage reimbursement rate and "much less than a reasonable approximation of its drivers' automobile expenses."[1] Compl. ¶¶ 14–16. The Plaintiff claims that, although the

---

[1]     According to the Plaintiff, the IRS business mileage reimbursement rate ranged between $0.535 and $0.575 per mile during the applicable period. First Am. Compl. ("**Compl.**") (ECF No. 21) ¶ 16. And companies like AAA have determined that the average cost of owning and operating a vehicle

drivers were paid an hourly wage at or slightly above the federal minimum wage, the "net" wage paid to drivers (after deducting vehicle expenses) dropped to a rate below the federal minimum wage because the Defendants' reimbursement formula failed to reasonably reimburse the delivery drivers for their driving-related expenses. Compl. ¶¶ 23, 27–32. According to the Complaint, this practice violated the FLSA and Maine's wage and hour laws, 26 M.R.S. §§ 661 *et seq*. Compl. ¶¶ 47–70.

In March of 2020, the parties stipulated to conditional certification of the FLSA collective action and requested that I stay the matter to allow the parties to engage in mediation. Joint Mot. to Approve Form of Notice of Collective Action and to Stay Pending Mediation (ECF No. 11). I granted the motion to stay and authorized the sending of a notice of collective action and opt-in consent forms to all current and former delivery drivers employed by the Defendants in the prior three years. Order (ECF No. 22). Fifty-six similarly situated drivers "opted in" as plaintiffs to the lawsuit by filing consent forms. Consent Forms of Opt-In Pls. (ECF Nos. 10, 24–25).

On December 9, 2020, the parties reported the matter settled. Joint Notice of Settlement (ECF No. 30). The Clerk then issued a procedural order, requiring counsel to file a stipulation of dismissal within thirty days or the case would be dismissed pursuant to Local Rule 41.1(a). Order (ECF No. 31). No stipulation of dismissal was

---

(for drivers who drive 15,000 miles per year) ranged between $0.571 and $0.608 per mile during that period. *Id*. The Plaintiff further alleges that the nature of the driving conditions associated with pizza delivery—such as short routes, frequent braking, and frequent starting and stopping of the engine—cause the delivery drivers to experience more frequent maintenance costs, lower gas mileage, higher repair costs, and more rapid vehicle depreciation than the average costs of owning and operating a vehicle. Compl. ¶ 17. For purposes of settlement, the parties agreed to use a blended rate of $0.55, approximating the average IRS standard business rate for the class period. Settlement and Release Agreement ("**Settlement Agreement**") 9 (ECF No. 33-1).

filed so on January 13, 2021, the Deputy Clerk entered an Order of Dismissal, dismissing the case with prejudice and without costs, subject to the right of the parties to move to reinstate the action within one year if the settlement was not consummated. Order of Dismissal (ECF No. 32).

Now the parties have filed the current joint motion seeking reinstatement of the case, certification of the proposed class for settlement purposes, preliminary approval of the parties' settlement agreement, authorization of their proposed class notice, and the scheduling of a final approval hearing. Under the settlement agreement, the Defendants agree to pay $250,000 to resolve all claims asserted against them in this case, including all claims under the FLSA and the wage and hour laws of Maine and Connecticut. Settlement and Release Agreement ("**Settlement Agreement**") 6–7, 9–10 (ECF No. 33-1). The Settlement Agreement contemplates two "rounds" which are not well defined. The first round seems to involve the drivers who have already opted into the FLSA collective. The second round seems to comprise drivers who—at this later stage in the litigation—receive notice of the proposed settlement and return claim forms, thereby opting into both the FLSA collective and the class action involving the state law claims. The Settlement Agreement is riddled with typographical errors and difficult to follow, but as best I can understand it, subject to court approval, the funds are to be distributed as follows:

- $5,000.00 to the named Plaintiff, Connor Anderson;

- Up to $15,000.00 to the Claims Administrator for fees and costs associated with administering the settlement (if costs are less than $15,000.00, unused funds go to the Absent Class Member Fund);

- Up to $80,000.00 in Plaintiff's counsel's attorneys' fees and costs (which amounts to 32% of the total settlement amount);

- $28,770.81 to the Round 1 Fund to be distributed *pro rata* (based on miles driven) to class members who filed a consent to sue form to join the litigation (in other words, the FLSA opt-in plaintiffs);

- $74,429.19 to the Round 2 Fund to be distributed to class members who file a consent to sue or claim form in response to the notice of class action settlement. Round 2 Fund recipients will get a potential settlement payment that is calculated based upon the number of miles driven during the class period (their individual miles);

- $31,800.00 to the Absent Class Member Fund to be distributed per capita to all drivers in the class who did not opt in and do not opt out (which is anticipated to amount to a minimum payment of approximately $25.00 each);

- $15,000.00 to a Contingency Fund for late opt-ins and other contingencies.

Settlement Agreement, § 3.1. The net amount to be paid out to the collective and class, which is estimated to include more than 1,000 individuals, *see* Mot. 10, is thus $150,000.00.

In exchange for these settlement payments, the class members receiving distributions from the Round 1 Fund or Round 2 Fund would be releasing:

all wage and hour claims or causes of action accrued from October 4, 2013, through the date the Court grants preliminary approval for unpaid minimum and overtime wages that were asserted in the Litigation, or that arise out of facts asserted in the Litigation, including minimum and overtime wage claims, and claims of under or unreimbursed expenses, meal and rest break claims, dual job/80-20 claims, tip credit, wage notification, posting, deduction, recordkeeping and paycheck claims, including all claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq.* [sic] and the wage and hour laws of Maine and Connecticut, whether known or unknown, including any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest; any and all common law and equitable claims, including claims for breach of contract, unjust enrichment, quantum meruit, etc.; and any and all derivative claims relating to unpaid wages

> or minimum wage compensation ("Released Claims") against the Released Parties.

Settlement Agreement, § 4.1(A). Their settlement checks would include similar release language providing that "[b]y signing and cashing or otherwise negotiating this check," the class member agrees "to release all claims or causes of action . . . for unpaid minimum and overtime wages, . . . including minimum and overtime wage claims, under the Fair Labor Standards Act and the state laws of Maine." Settlement Agreement, § 4.2(A). Absent class members, those who do not return claim forms (and do not request to be excluded), "unconditionally waive, release, extinguish, acquit, and forever discharge" all their wage and hour claims accrued from October 4, 2013, "including all claims under wage and hour laws of Maine and Connecticut . . . without releasing FLSA claims." Settlement Agreement, § 4.1(B). Their settlement checks would include release language that "[b]y signing and cashing or otherwise negotiating this check," the class member agrees "to release all claims or causes of action . . . for unpaid [minimum] and overtime wages . . . , including minimum and overtime wage claims, under the state laws of Maine." Settlement Agreement, § 4.2(B).

The parties also have submitted a proposed Notice of Class Action Settlement for my approval. Notice of Class Action Settlement ("**Notice**") (ECF No. 33-2). The Notice informs recipients that they have the following options: (1) if they previously filed a consent, they do not need to do anything and will receive a payment from the Round 1 Fund; (2) if they submit a claim form within sixty days of the Notice mailing, they will receive the greater of the minimum settlement payment or a *pro rata* share

of the Round 2 Fund; (3) if they do nothing, they will receive a minimum settlement payment and release their Maine claims; (4) if they opt out of settlement, they waive any benefits due under the settlement but will not be bound by any releases and can pursue individual claims against the Defendants; or (5) they can object to the settlement. Notice 2–3. Using a class list provided by the Defendants, the Claims Administrator would locate and mail the Notice to all class members. Settlement Agreement § 2.5.

## DISCUSSION

The Parties jointly seek reinstatement of the case, certification of the proposed class action for settlement purposes, preliminary approval of the settlement agreement, and approval of the proposed notice of the settlement to the class.

## I.    Reinstatement of the Case

As a threshold matter, I grant the parties' request to reinstate the case. The Order of Dismissal entered by the Clerk's Office under Local Rule 41.1(a) was in error, as Local Rule 41.1(c) governs here. D. Me. Local R. 41.1(c) ("In actions to which Fed. R. Civ. P. 23(e) . . . appl[ies], or in which any other rule or any statute of the United States so requires, dismissal under this rule will be made by Court order."). This case was brought under the FLSA and Rule 23 of the Federal Rules of Civil Procedure, and it requires court approval for any settlement. *See also* Fed. R. Civ. P. 23(e) ("[C]laims . . . of a . . . class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval."); *Prescott v. Prudential Ins. Co.*, No. 2:09-cv-322-DBH, 2011 WL 6662288, at *1 (D. Me. Dec. 20, 2011) (explaining that for

an employee's waiver of rights to unpaid wages to be binding, settlement of FLSA claims requires either court approval or supervision by the U.S. Secretary of Labor) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982)). Accordingly, I am reinstating the case.

## II.   Preliminary Approvals of Proposed Settlement and Notice

The parties seek certification of a class under Fed. R. Civ. P. 23(b)(3). Mot. 12. Members of a "class proposed to be certified for purposes of settlement under Rule 23(b)(3)" must be given notice of their right to request exclusion from the class and the binding effect of any judgment if they fail to exercise their right to "opt out" of the litigation. Fed. R. Civ. P. 23(c)(2)(B).[2]

### A.   Legal Standards for Settlement Approval

#### 1.   Rule 23

Federal Rule of Civil Procedure 23(e) delineates the procedure followed when parties ask the court "to certify a class solely for purposes of implementing [a] settlement." William B. Rubenstein, *Newberg on Class Actions* § 4:93 (5th ed. 2014). A two-step process is followed. At the first stage, I must direct that notice be given in a reasonable manner to all members of the class who would be bound by the proposed settlement *if* "giving notice is justified by the parties' showing that the court will

---

[2]     The parties' motion focuses on the Rule 23 class action, but the Plaintiff brought this litigation as a "hybrid" action so I must analyze the proposed settlement in terms of both the purported class action and the FLSA collective action. *See Xiao Ling Chen v. XpresSpa at Terminal 4 JFK LLC*, No. 15 CV 1347 (CLP), 2018 WL 1633027, at *5 (E.D.N.Y. Mar. 30, 2018) ("Although plaintiffs' current motion is directed solely to the Rule 23 Class, the Court is unable to consider the Rule 23 Class in isolation, because the parties' Settlement Agreement also purports to settle the claims of members of the . . . FLSA Collective.").

likely be able to" approve the settlement proposal and certify the class for purposes of judgment on the proposed settlement. Fed. R. Civ. P. 23(e)(1).

The second stage involves the actual approval of the settlement proposal, and it occurs after notice is given to all class members, a hearing is held, and a finding is made that the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). Under Rule 23(e)(2), in deciding whether to approve the settlement as "fair, reasonable, and adequate," I must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3]

"A proposed settlement of a class action may be given preliminary approval 'where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as

---

[3]     The First Circuit has not settled on a single test for determining the fairness, reasonableness, and adequacy of a proposed class action settlement, but courts in this circuit "consider some or all of the following factors: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration." *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003).

unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval.' " *Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2011 WL 3273930, at *5 (D.R.I. July 29, 2011) (quoting *Passafiume v. NRA Grp., LLC*, 274 F.R.D. 424, 2010 WL 6641072, at *5 (E.D.N.Y. Nov. 30, 2010)).

On the other hand, "[t]he court should *not* direct notice to the class until the parties' submissions show it is likely that the court will be able to approve the proposal after notice to the class and a final approval hearing." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment (emphasis added). "The court may direct the parties to supply further information about the topics they do address, or to supply information on topics they do not address." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment.

The Advisory Committee notes accompanying Rule 23 point out that "[t]he decision to give notice of a proposed settlement to the class is an important event" and "should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval."[4] Fed. R. Civ. P. 23(e)(1) advisory

---

[4]     "The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). The Advisory Committee gives some examples of the "many types of information that might appropriately be provided to the court," including: (1) "the extent and type of benefits that the settlement will confer on the members of the class," (2) "information about the likely range of litigated outcomes, and about the risks that might attend full litigation," (3) "[i]nformation about the extent of discovery completed in the litigation or in parallel actions," (4) "information about the existence of other pending or anticipated litigation on behalf of class members involving claims that would be released under the proposal," (5) "the proposed handling of an award of attorney's fees under Rule 23(h)," (6) "any agreement that must be identified under Rule 23(e)(3)," and (7) "any other topic that [the parties] regard as pertinent to the determination whether the proposal is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment.

committee's note to 2018 amendment. "Court approval is necessary to 'protect unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise.' " *Glynn v. Maine Oxy-Acetylene Supply Co.*, No. 2:19-cv-00176-NT, 2020 WL 6528072, at *10 (D. Me. Nov. 5, 2020) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

## 2. FLSA

"[I]n the FLSA context, for an employee's waiver of his rights to unpaid wages and liquidated damages to be binding, either the U.S. Secretary of Labor must supervise the settlement or a court must approve it." *Prescott*, 2011 WL 6662288, at *1 (citing *Lynn's Food Stores,* 679 F.2d at 1352–53). Part of the court's role is to assure that the FLSA is being properly applied and that the lawsuit is not being used as a device to discount employees' rightful claims. *Prescott*, 2011 WL 6662288, at *1.

In order to approve a FLSA settlement, the court must determine that it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Curtis v. Scholarship Storage Inc.*, No. 2:14-CV-303-NT, 2016 WL 3072247, at *3 (D. Me. May 31, 2016) (quoting *Lynn's Food Stores*, 679 F.2d at 1355). In addition, at least one named plaintiff must be willing to sign the agreement. *See Michaud v. Monroe Muffler Brake, Inc.*, No. 2:12-cv-00353-NT, 2015 WL 1206490, at *9. "The factors supporting approval of a Rule 23 settlement of state wage and hour claims may also support approval of a collective action settlement of FLSA claims." *Id.*[5]

---

[5]      "A court's review of a FLSA settlement, however, is slightly less demanding than its review of a Rule 23 class action settlement because, unlike a Rule 23 class action, a FLSA collective action

### 3.     Hybrid Actions

In hybrid actions involving both a Rule 23 class action and a FLSA collective action, the settlement and release analysis is complicated by the different opt-in and opt-out procedures at play. *See Wyms v. Staffing Sols. Se., Inc.*, No. 15-CV-0643-MJR-PMF, 2016 WL 3682858, at *2 (S.D. Ill. July 12, 2016) ("[T]he release matter can get a bit tricky given the differences between the class and collective action mechanisms"). A Rule 23 class action operates as an opt-out system—class members who fail to opt out of the settlement typically receive their share of the recovery and release all their claims covered in the complaint. *Amchem Prods.*, 521 U.S. at 614–15. By contrast, in a collective action, litigants only release their FLSA claims by opting in to the case—if they do not affirmatively opt in, they retain their individual rights to sue in the future regardless of what happens to the federal wage claims in the collective action. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989).

Other courts have held that settlements in hybrid actions need to account for these differences by limiting the release in the settlement agreement and clearly explaining the options available to class and collective members in the notice. *See, e.g.*, *Smith v. Kaiser Found. Hosps.*, Case No. 18cv780-KSC, 2020 WL 5064282, at *11–12, *17 (S.D. Cal. Aug. 26, 2020); *Howard v. Web.com Grp. Inc.*, No. CV-19-00513-PHX-DJH, 2020 WL 3827730, at *9–10 (D. Ariz. July 8, 2020); *Wyms*,

---

settlement does not bind absent class members." *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *5 n.7 (D. Mass. Sept. 30, 2016).

2016 WL 3682858, at *3; *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 608 (E.D. Cal. 2015); *Leap v. Yoshida*, No. 14-3650, 2015 WL 619908, at *2 (E.D. Pa. Feb. 12, 2015); *McClean v. Health Sys., Inc.*, No. 11-03037-CV-S-DGK, 2014 WL 3907794, at *4–7 (W.D. Mo. Aug. 11, 2014). With hybrid action settlements, the fairness analysis involves reviewing both the settlement amount and the other terms of the settlement agreement, including the scope of any releases. *See Wyms*, 2016 WL 3682858, at *2.

## B.   Applying the Preliminary Approval Standards to the Parties' Proposed Settlement and Notice

In their joint motion, the parties assert that the proposed settlement is "fair, reasonable, and adequate and should be approved." Mot. 9. But "[a] court must not simply rubber-stamp settlement agreements as approved." *O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 2:19-CV-02378, 2020 WL 4493157, at *8 (W.D. Tenn. Aug. 4, 2020) (quoting *Snook v. Valley Ob-Gyn Clinic, P.C.*, No. 14-cv-12302, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015)) (internal punctuation omitted). Here, the proposed settlement must take into account the special complexities relating to approval of a settlement of FLSA claims. I am also mindful of my duty to protect unnamed Rule 23 class members from unjust or unfair settlements. I have numerous concerns with the parties' submissions, which must be satisfactorily addressed before I will preliminarily approve the parties' settlement.

### 1.   Class Representation and Negotiations

If it appears that the class representative and class counsel have adequately represented the class and if the proposed settlement was negotiated at arm's length,

these factors weigh in favor of approval. Fed. R. Civ. P. 23(e)(2)(A)–(B); *see Trombley*, 2011 WL 3273930, at *5 ("A proposed settlement of a class action may be given preliminary approval where it is the result of serious, informed, and non-collusive negotiations . . . .") (internal quotation marks and citation omitted).

The named Plaintiff has been serving in the role of class representative and appears to be adequately representing the interests of the class. The class is represented by counsel experienced in wage-and-hour claims, and the parties report that they fairly, honestly, and rigorously negotiated the settlement following investigation[6] and third-party mediation. Mot. 7. These factors suggest the proposal is likely to be found fair, reasonable, and adequate. *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").

### 2.   The Settlement and Range of Possible Approval

Another factor in the approval determination, is whether I am likely to find the settlement fair, reasonable, and adequate "after considering whether . . . the relief

---

[6]   The parties' motion refers to "investigation" but does not disclose whether and how much discovery has been conducted in this action. Other courts in this circuit have noted the importance of "ascertain[ing] whether sufficient evidence has been obtained through discovery to determine the adequacy of the settlement." *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) (citing *Giusti–Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34, 38 (D.P.R. 1993)). At this preliminary approval stage, I take the parties at their word and assume that they have sufficiently investigated the claims. But to help me better evaluate the settlement's adequacy, the parties' next submission should contain more information about the nature and extent of the investigation and any discovery conducted. *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 610–11 (E.D. Cal. 2015) ("The Court is concerned that the extent of discovery that class counsel has engaged in is not fully reflected to the Court in the motion for preliminary approval or the Settlement Agreement.").

provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C); *see Trombley*, 2011 WL 3273930, at *5 ("A proposed settlement of a class action may be given preliminary approval . . . where the settlement appears to fall within the range of possible approval.") (internal quotation marks and citation omitted).

Whether the proposed settlement amount is fair and reasonable depends on how it compares to the class members' potential recovery. *See Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-cv-515-DBH, 2014 WL 1057079, at *2 (D. Me. Mar. 14, 2014) (noting that "comparison of the proposed settlement with the likely result of litigation" is one factor in evaluating a Rule 23 settlement). The parties have not explained their potential damages under each of their legal theories. It is unclear, for example, whether FLSA opt-ins would be eligible for damages occurring over a two-year period or a three-year period. It appears that the state claims benefit from a longer statute of limitations, but it is unclear whether the class has a claim for liquidated damages. Further complicating the matter, while the Complaint alleges only violations of the FLSA and Maine law, the Settlement Agreement contemplates that drivers will waive rights under Connecticut law. The parties have not provided any information about Connecticut's minimum wage laws.[7]

The proposed Settlement Agreement provides for a net payment of $150,000 to the class. The parties have asserted that the Settlement Agreement "provides an excellent outcome," Mot. 4, but to determine whether I will likely be able to find that

---

[7]    Nor have they provided any authority for the proposition that a class action settlement can release claims—like the Connecticut minimum wage law claims here—that were never asserted in the litigation. I am skeptical that such an overreaching release would be permissible.

the proposed settlement amount is adequate, I need to know how much the aggregate claims in this case are worth. *See Thompson v. Costco Wholesale Corp.*, No. 14-CV-2778-CAB-WVG, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) (citing *Millan*, 310 F.R.D. at 611) ("At a minimum, Plaintiff should provide an estimate of the total potential recovery and explain how the parties arrived at the settlement amount so the Court can determine what percentage recovery the class is receiving. Plaintiff's counsel's conclusion that the settlement is fair and reasonable does not suffice."); *Sharobiem v. CVS Pharmacy, Inc.*, No. CV 13-9426-GHK (FFMx), 2015 WL 10791914, at *2 (C.D. Cal. Sept. 2, 2015) (denying motion for preliminary approval of hybrid action settlement where the plaintiff failed to provide sufficient information about the estimated total possible recovery and why the settlement amount "is an appropriate balance given the potential total recovery and the specific risks of litigation"); *Wyms*, 2016 WL 3682858, at *3 (same).

The parties should also submit information about (1) the range of potential recovery for individual class members, (2) the range of expected payments to individual class members within the different funds under the Settlement Agreement, (3) the average expected settlement recovery for individual class members, and (4) how the parties arrived at these figures. *See Xiao Ling Chen v. XpresSpa at Terminal 4 JFK LLC*, No. 15 CV 1347 (CLP), 2018 WL 1633027, at *3 (E.D.N.Y. Mar. 30, 2018) (denying motion for preliminary approval where "[t]he parties have not provided the Court with any information that would allow the Court to compare the amount of money any particular individual would receive under the

16

Settlement Agreement with the amount that individual would receive if the case were to proceed to trial and the individual were to be awarded full recovery"); *Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 83 (E.D.N.Y. 2019), *reconsideration denied,* 381 F. Supp. 3d 239 (E.D.N.Y. 2019) (denying preliminary approval because the court "lack[ed] basic information on the potential range of recovery for any employees" where "[a]ll that has ever been provided is a summary statement of the gross settlement amount and a basic breakdown of attorney's fees, costs, service awards, and employer-side taxes"). These estimates are necessary to determine whether the proposed settlement appears to fall within the range of possible approval.

### 3. Fairness Questions and Obvious Deficiencies in the Settlement Agreement and Notice

In determining whether I am likely to find the proposed settlement fair and adequate, I also consider the Settlement Agreement itself and whether it treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). As part of my preliminary review, I look to whether there are any "obvious deficiencies" in the Settlement Agreement. *See Trombley*, 2011 WL 3273930, at *5 ("A proposed settlement of a class action may be given preliminary approval where . . . there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys). . . .") (internal quotation marks and citation omitted). Here, "where settlement negotiations precede[d] class certification, and approval for settlement and certification are sought simultaneously," I must "be even

more scrupulous than usual" in my examination of the proposed settlement for fairness." *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) (internal quotation marks and citation omitted). "A court does not have the authority to delete, modify, or substitute certain provisions of a settlement agreement, but rather, the settlement agreement 'must stand or fall in its entirety.' " *O'Bryant*, 2020 WL 4493157, at *8 (quoting *Smothers v. NorthStar Alarm Servs., LLC*, 2019 WL 280294, at *9 (E.D. Cal. Jan. 22, 2019)).

This fairness analysis is complicated by the fact that this is a hybrid action involving both claims for violations of the FLSA and violations of the Maine Wage Law. Because of the competing opt-in and opt-out provisions that apply, settlement agreements that "inextricably intertwine[]" Rule 23 class and FLSA collective claims can "prevent approval of the [c]ollective settlement" and "suggest that the proposed Rule 23 settlement therefore cannot be 'fair, reasonable, and adequate.' " *See Xiao Ling Chen*, 2018 WL 1633027, at *6 (quoting Fed. R. Civ. P. 23(e)(2)). "[C]ourts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims." *Howard*, 2020 WL 3827730, at *9. Thus, to be found fair, the parties' proposal must clearly draw a line between the FLSA collective's settlement terms and the settlement terms of the Rule 23 class.

### a.   Issues with FLSA and Class Structure

After reading the Settlement Agreement, I am left with many questions.[8] The parties assert that the entire class is over 1,000 drivers. Section 3.1(A)(11)[9] provides the details of how the funds will be distributed to class members. At first blush, the Settlement Agreement seems to distinguish between the FLSA collective and the Rule 23 class members. At one end of the spectrum are the fifty-six individuals who previously joined the FLSA action, the Round 1 Opt-Ins,[10] and they receive a *pro rata* share (based on miles driven) of the Round 1 Fund, which is supposed to contain $28,770.81.[11] In exchange, the Round 1 Opt-Ins give up their FLSA and state-law claims. It is unclear whether a Round 1 Opt-In's share will be limited to the FLSA statute of limitations period or whether the "miles driven" factor of the Round 1 Opt-Ins' shares will be calculated over the limitations period for the state claims.[12] Or

---

[8]     The Notice to the Class informs potential members that they can request a copy of the Settlement Agreement if they want more detail.

[9]     The section that includes this subparagraph (b) is likely meant to be Section 3.1(A)(ii)—not 3.1(A)(*11*), because it appears to be referred to as "§ 3.1(A)(ii)" in § 3.1(A)(11)(d). I follow the Settlement Agreement's use of 3.1(A)(11), but I advise the parties to proofread the remainder of the Settlement Agreement for similar formatting and typographical issues. There are many, which make the document difficult to read and understand, and there are sections referred to, for example Section 2.1(B) and 2.1(C), which do not actually exist.

[10]    The Settlement Agreement defines the "Round I Opt-ins" as "any Class Member who filed a consent to sue form to join the Litigation prior to December 10, 2020."

[11]    It may be reasonable to give drivers who filed claims earlier and may have preserved more of their FLSA claims than those filing later claim forms a larger slice of the settlement pie. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *2 (S.D. Ohio Nov. 25, 2019) (finding it equitable to divide settlement fund to class members based on "(1) when they opted into the case and (2) how many hours they worked").

[12]    I am also unclear as to what the parties intended to use as the statute of limitations period for the FLSA. The Class Period is defined as beginning in October 4, 2013. The Complaint was filed on October 4, 2019, so I am assuming that for the Maine claims a six-year statute of limitations is being

perhaps, the Round 1 Opt-Ins will also be able to opt into Round 2 (more questions on that to come). On the other end of the spectrum are the "Absent Class Members," who did not respond to the Notice of Collective Action Lawsuit by opting into the FLSA action and who do not respond to the proposed class notice by returning a claim form or submitting an opt-out notice. The Absent Class Members are to receive a per capita share of the $31,800 Absent Class Member Fund. In exchange, the Absent Class Members give up only their state law claims and not their FLSA claims.

Less clear and more problematic is what the Settlement Agreement refers to as "Round 2 Opt-Ins" and "Participating Class Members."[13] According to § 3.1(A)(11)(b), Round 2 Opt-Ins will receive "their Potential Settlement Payment" (an undefined term). But if "such payments plus the minimum payments to other Participating Class Members exceed the Round 2 Fund," then the Round 2 Opt-Ins will instead "receive a *pro rata* share of the Round 2 Fund, with all participating Class Members anticipated to receive a minimum payment of approximately $25.00 to be paid out of the Round 2 Fund." Settlement Agreement § 3.1(A)(11)(b). The Settlement Agreement provides that the calculation of the Potential Settlement Payment is:

---

used. The parties have not indicated whether any different statute of limitations applies in Connecticut.

[13]     The term "Round 2 Opt-Ins" is not defined in the Settlement Agreement—though it should be for clarity—but presumably it refers to a class member who, in contrast to the Absent Class Members, opts in by returning the Claim Form and Release included with the proposed Notice of Class Action Settlement ("Notice"). " 'Participating Class Member' means any class member who files a consent to sue or claim form." Settlement Agreement § 1. The Settlement Agreement defines "Class Members" as "all delivery drivers employed by Defendants who received mileage reimbursements [during the class period] who do not affirmatively opt-out of the Litigation following the Round 2 Notice." Settlement Agreement § 1.

> based upon the ratio of the total number of his or her recorded miles driven for Defendant during the Class Period which shall be his/her "Individual Miles," the aggregate of all Individual Miles among all Class Members with the exception of Round 1 Opt-ins shall be the "Class Miles" (reduced by the statute of[ ]limitations).

Settlement Agreement § 3.1(A)(11)(b).

The way this "calculation" is written makes very little sense, and perhaps that is because the Settlement Agreement describes a ratio but does not clearly delineate the numerator or the denominator. Assuming that the parties intended the ratio to be Individual Miles *over* Class Miles, the "formula" is still confusing. What does "reduced by the statute of limitations" mean? How will Round 1 Opt-Ins be reimbursed for the period between October 4, 2013 and the start of the FLSA Collective period? Will those amounts come from the Round 1 fund or the Round 2 fund? Will the Round 1 Opt-Ins be expected to submit an additional Round 2 claim form? If people who submitted a FLSA consent prior to December 2020 can recover from both funds, but only if they submit a Round 2 claim form, then that needs to be explained in the Notice.

As for the fairness of the releases contained in the Settlement Agreement, I have further concerns. Under the Settlement Agreement, both Round 1 Opt-Ins and Round 2 Opt-Ins waive all wage and hour claims accrued from October 4, 2013, including all FLSA claims and all Maine and Connecticut state law wage and hour claims. As currently structured, there is no way for a class member who receives notice of this settlement to settle just his or her FLSA claims or just his or her state

wage claims.[14] It is an all-or-nothing proposition. Similarly, because opting-in class members are releasing both FLSA and state wage claims simultaneously under this Settlement Agreement, I have no way of gauging the value of the FLSA claims.

Further, the Settlement Agreement is not clear on the procedure by which the FLSA consents of the Round 2 Opt-Ins—those class members who "consent to join" this lawsuit by signing and returning the Claim Form and Release after they receive notice of the settlement—will be filed with the Court. The FLSA requires that individuals file written consents with the court to opt into a collective action like this one. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Although the Claim Form and Release is addressed "To: The Clerk of the Court and to Each Party and Counsel of Record," there is no mention of filing the returned consents with the Court. *See O'Bryant*, 2020 WL 4493157, at *10 (denying preliminary settlement approval and finding settlement agreement "ineffective" where "there is no procedure by which any consent by the Opt-In Plaintiffs will be filed with the Court"). And the Notice does not inform class

---

[14]     Nor does there appear to be a way for an opt-in party plaintiff (a Round 1 Opt-In) to exclude himself or herself from the settlement of the state claims, which means that to settle his or her FLSA claims, an opt-in plaintiff must also release the state claims. When they received notice of the FLSA collective action and filed consent forms to opt in, there was no mention of the state wage claims, only the federal minimum wage law. This lack of notice and consent violates the opt-in plaintiffs' due process rights. *See McClean v. Health Sys., Inc.*, No. 11-03037-CV-S-DGK, 2014 WL 3907794, at *5 (W.D. Mo. Aug. 11, 2014) ("If the Court approved the Settlement in its current form, the FLSA Opt-In Plaintiffs would release their state law claims despite never receiving notice of the Rule 23 class action or being afforded the opportunity to opt out of it. This would violate their due process rights."). This also goes back to the earlier issue I raised about how the FLSA claims and state claims were valued and whether this valuation and distribution is likely to be found fair. There is not enough information in the parties' submissions for me to assess that.

members that if they do return the Claim Form and Release, it will be filed on the public docket. These items should be clarified.

Because the parties have provided insufficient information to allow me to determine whether to give notice of the settlement proposal to the class, the parties' motion must be denied. *See Douglas*, 371 F. Supp. 3d at 83 (declining to preliminarily approve hybrid action settlement where "[t]he parties failed to provide the Court sufficient information" to determine if agreement was "fair and reasonable").

### b.   Proposed Notice Issues

At this preliminary stage, Rule 23(e)(1) authorizes me to direct notice of the settlement to the class if the moving parties show that I will "likely be able to" grant final approval to the settlement. Fed. R. Civ. P. 23(e)(1). Because I am not likely to approve the proposal in its present form, I will not direct notice at this time. *See* Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment ("The court should not direct notice to the class until the parties' submissions show it is likely that the court will be able to approve the proposal after notice to the class and a final approval hearing."); *Diaz v. Lost Dog Pizza, LLC*, No. 17-cv-2228-WJM-NYW, 2018 WL 3031562, at *5 (D. Colo. June 19, 2018) ("Given the lack of information regarding the anticipated settlement, the Court cannot give its preliminary approval . . . and therefore also cannot approve the parties' proposed Rule 23 Notice."). That said, in the interests of efficiency, I will point out some obvious deficiencies in the proposed Notice now so that they can be remedied in the parties' next submissions.

Rule 23 requires that courts "direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "The notice must

clearly and concisely state in plain, easily understood language" certain information to the class recipients, including information about the nature of the action, the certified class definition, the class claims, exclusion from the class, and the binding effect of a class judgment. *Id.* In hybrid Rule 23 class and FLSA collective actions, "courts considering approval of settlements in these hybrid actions consistently require class notice forms to explain: "(1) the hybrid nature of the action; and (2) the claims involved in the action; (3) the options that are available to the State Law Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collect[ive] action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing." *Howard*, 2020 WL 3827730, at *9 (citation omitted); *see also Thompson*, 2017 WL 697895, at *8 (denying preliminary approval where proposed notice listed all claims asserted in the complaint but did "not acknowledge the hybrid nature of th[e] lawsuit").

Here, the proposed Notice suffers from the same deficiencies as the Settlement Agreement with respect to the treatment of the existing opt-in FLSA collective and the remaining class members. The Notice and the claim form should conspicuously state the differences between the federal and state law claims and describe what federal rights recipients would be releasing by returning the claim form. It is not clear from the parties' submissions if the Round 1 Opt-Ins are entitled to a share of the Round 2 Fund. If they *are* entitled to a Round 2 distribution, the Notice tells them to do nothing. That do-nothing direction would likely lead to those members foregoing

Round 2 payments, which appear to cover both FLSA and state claims, in exchange for their full releases of both FLSA and state claims.

Relatedly, I am also concerned about the effect of the earlier Notice of Collective Action Lawsuit. In it, potential FLSA Collective members were told: "If you choose not to join this lawsuit, you will not be affected by any judgment or settlement rendered in this lawsuit, whether favorable or unfavorable to the opt-in plaintiffs." Notice of Collective Action Lawsuit 2 (ECF No. 15). However, if someone who previously received that Notice did nothing, and now continues to "do nothing," their rights under state wage laws will be lost under this lawsuit in contravention of what they were originally told.

The Notice also does not tell them how much to expect in terms of payment[15] so they have no way of making an informed decision about what they will receive compared to what they are giving up when they sign and return the enclosed claim form waiving all federal and state wage claims. The introduction of the Notice merely identifies a "substantial cash benefit" for delivery drivers who file a claim form and release all their claims. Notice 1.

Further, the Notice contains contradictory information about the extent of the releases. By way of example, the table in Part 3 of the Notice informs recipients that if they "do nothing" and do not submit a claim form, they will still receive a minimum

---

[15]    And what the Settlement Agreement provides is more complicated than the draft Notice, which just says it will be shared *pro rata*. The Settlement Agreement says Round 2 will be *pro rata* if the Potential Settlement Payments plus the minimum $25 payments to all Absent Class members exceeds the amount of money in the fund.

settlement payment and will "release all claims asserted on [their] behalf arising under Maine law." Notice 2. But Part 8 of the Notice lists the statutes of limitations for both Maine *and Connecticut*, and the attached Claim Form and Release provides for a release of both Maine *and Connecticut* claims. Notice 9 (emphasis added). If there is a reason for these differing state releases, it is not clear from the parties' submissions.

The parties should remedy these Notice defects—in addition to conforming the revised Notice to the changes that must be made in the Settlement Agreement—before resubmitting the Notice for approval. Most importantly, the Notice must be clear, concise and understandable.

## III.   Preliminary Certification of the Class for Settlement Purposes

As noted earlier, the parties have previously stipulated to the conditional certification of the FLSA collective, Joint Mot. to Approve Form of Notice of Collective Action and to Stay Pending Mediation, and they now seek to have the class preliminarily certified under Rule 23(b)(3). Because I cannot conditionally approve the settlement until the issues identified above are resolved, I will not analyze whether to preliminarily certify the class for purposes of settlement. Suffice it to say that, at this time, I see no real impediments to preliminarily certifying a class, provided the parties can address the problems with the proposed settlement and the notice to the class.

## CONCLUSION

For the reasons stated above, I **GRANT** the parties' motion to reinstate the case. However, because I have concerns that preclude me from finding that I am likely to approve the settlement proposal as currently drafted, I **DENY** without prejudice the parties' joint motion for preliminary approval of the proposed class action settlement, for conditional certification of the class, and for approval and authorization of the proposed notice of class action. The parties are free to file a renewed motion that sufficiently addresses my concerns, and they may request a conference to review these preliminary approval issues if they feel it would be helpful.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 27th day of August, 2021.