UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CONNOR ANDERSON,<br>individually and on behalf<br>of similarly situated persons,<br><br>                     Plaintiff,<br><br>v.<br><br>TEAM PRIOR, INC. and LEE PRIOR<br><br>                     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Docket No. 2:19-cv-00452-NT<br>)<br>)<br>)<br>) |

**ORDER ON PLAINTIFF'S RENEWED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT
AND FOR LEAVE TO FILE AMENDED COMPLAINT**

Before me is the Plaintiff's unopposed motion for preliminary approval of the parties' settlement agreement and for leave to file an amended complaint. Renewed Mot. for Preliminary Approval of Settlement Agreement & for Leave to File Am. Compl. ("**Renewed Mot.**") (ECF No. 39). For the reasons stated below, the motion is **GRANTED**.

**BACKGROUND**

This case concerns wages allegedly owed to Domino's Pizza delivery drivers under the Fair Labor Standards Act ("**FLSA**"), 29 U.S.C. § 201 *et seq.*, and Maine's wage laws, 26 M.R.S. §§ 661 *et seq.* The Plaintiff, Connor Anderson, brought suit on behalf of himself and all other similarly situated delivery drivers employed by Domino's Pizza franchises owned by Defendants Team Prior, Inc. and Lee Prior (collectively, the "**Defendants**"). First Am. Compl. ("**Compl.**") (ECF No. 21) ¶ 1. The

complaint alleges that the Defendants' driver reimbursement policy violates the FLSA and Maine law because it fails to reasonably cover all of the drivers' expenses relating to their personal vehicle use, and these unreimbursed expenses caused the delivery drivers' wages to fall below the minimum wage. *Id.*[1]

After the parties stipulated to conditional certification of the FLSA collective action and notice was sent to all current and former delivery drivers employed by the Defendants in the prior three years, fifty-six drivers "opted in" as plaintiffs to the lawsuit by returning consent forms. *See* Consents (ECF Nos. 10, 24–25.) The matter was stayed at the parties' request so they could engage in mediation. Order (ECF No. 22). In January of 2021, after the parties reported the matter settled, the Deputy Clerk dismissed the case, subject to the parties' right to move to reinstate the action within one year. Order of Dismissal (ECF No. 32).

The parties then filed a joint motion seeking reinstatement of the case, certification of the proposed class for settlement purposes, preliminary approval of the parties' settlement agreement, authorization of their proposed class notice, and the scheduling of a final approval hearing. In August of 2021, I reinstated the case but denied the rest of the joint motion due to questions and concerns I had about the fairness of the parties' settlement agreement and obvious deficiencies in the settlement and proposed notice. Order on Joint Mot. to Reinstate Case, for Prelim. Approval of Settlement Agreement, & Associated Relief (ECF No. 34) ("**Order**").

---

[1]   Additional details of these allegations are found in my earlier Order. *See* Order on Joint Mot. to Reinstate Case, for Prelim. Approval of Settlement Agreement, & Associated Relief (ECF No. 34).

The parties have now gone back to the drawing board in an effort to address my concerns, and the Plaintiff has submitted an unopposed renewed motion for preliminary approval of the parties' revised settlement ("**Renewed Motion**"). Renewed Mot. 3, 6. Incorporated within the Renewed Motion is a request for leave to file a second amended complaint to add a class claim under Connecticut's minimum wage law. Renewed Mot. 1, 3. The Plaintiff also asks that I provisionally certify the settlement class for settlement purposes only, approve and authorize the proposed class notice of settlement, extend the stay of litigation to permit settlement authorization, and schedule a final approval hearing.  Renewed Mot. 25.

## DISCUSSION

### I. Leave to File a Second Amended Complaint

As part of their settlement, the parties agreed that the Plaintiff would file a Second Amended Complaint ("**Amended Complaint**") adding a class claim under the Connecticut Minimum Wage Act. Renewed Mot. 1 n.1. Under Federal Rule of Civil Procedure 15(a), after the time to amend "as a matter of course" has passed, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Here, the Defendants consent and justice requires that the Plaintiff be granted leave to amend.

I had questioned Connecticut's relevance in my prior Order because the parties' earlier proposed settlement featured drivers releasing their rights under Connecticut law even though the operative complaint only alleged Maine state wage

3

violations. *See* Order 15. The Amended Complaint remedies this issue. According to the proposed Amended Complaint, in addition to stores in Maine, the Defendants own and operate a Domino's franchise employing delivery drivers in Connecticut. Second Am. Compl. ¶¶ 8, 11 (ECF No. 39-2); *see* Renewed Mot. 6 n.6. The Connecticut drivers would be subject to Connecticut, rather than Maine, state law. Allowing the Plaintiff to file the Amended Complaint will ensure that drivers in the proposed settlement will not be releasing rights under state wage laws that go beyond the state (either Maine or Connecticut) in which the individual driver was employed. Therefore, I **GRANT** the Plaintiff's motion for leave to amend. The Plaintiff is directed to file the Second Amended Complaint on the docket.

## II.     Provisional Certification of the Class

Before I turn to the revised settlement, I address the requirements for preliminary certification. The Plaintiff brought this action as a class action and a FLSA collective action, making this matter a "hybrid" action. The parties previously stipulated to conditional certification of the FLSA collective in connection with my approval of their notice of collective action, *see* Joint Motion to Approve Form of Notice of Collective Action and to Stay Pending Mediation (ECF No. 11), and they plan to move for final certification at the final approval stage, Renewed Mot. 21. The Plaintiff now asks that I preliminarily certify the class under Rule 23 of the Federal Rules of Civil Procedure. The Defendants do not oppose class certification for purposes of settlement only. Renewed Mot. 21–25. But I must review the proposed class myself to ensure it meets the prerequisites for class certification under Rule 23.

## A. Legal Standard

A plaintiff seeking class certification must first demonstrate that all requirements of Federal Rule of Civil Procedure 23(a) are satisfied. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 345 (2011). The Rule 23(a) requirements are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Next, the named plaintiff must show that the class falls under one of the types of class actions described in Rule 23(b). *Wal-Mart Stores, Inc.,* 564 U.S. at 345. "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' " *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3)).

## B. The Proposed Class of Delivery Drivers

### 1. Rule 23(a) Prerequisites

The proposed class meets the Rule 23(a) requirements of (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of interest protection.

#### a. Numerosity

First, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). " 'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the

class." *Advert. Specialty Nat'l Ass'n v. Fed. Trade Comm'n*, 238 F.2d 108, 119 (1st Cir. 1956). "Although numbers alone are not usually determinative," numerosity can at times be satisfied by "the sheer number of potential litigants in a class." *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 25 (D. Me. 2013) (citations omitted). A class of forty or more individuals usually satisfies the numerosity requirement. *Glynn v. Me. Oxy-Acetylene Supply Co.*, No. 2:19-cv-00176-NT, 2020 WL 6528072, at *2 (D. Me. Nov. 5, 2020); *see also* William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed. 2014) ("As a general guideline, . . . a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone."). Here, the class consists of more than 1,800 delivery drivers and satisfies the numerosity requirement.

### b.   Commonality

Next, the Plaintiff must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). But "[w]hat matters to class certification . . . is not the raising of common 'questions' " so much as "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). "Those common answers typically come in the form of 'a particular and sufficiently well-defined set of allegedly illegal policies or practices' that work similar harm on the class plaintiffs." *Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 28 (1st Cir. 2019) (quoting *Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014)). In this case, the Plaintiff alleges that the Defendants' driving-expense reimbursement formula

6

caused the systematic underpayment of delivery drivers. The class claims involve common questions of law and fact surrounding the same underlying reimbursement policy. Because such an across-the-board practice works similar harm on the class members, the commonality requirement is satisfied.

### c. Typicality

In addition, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied when the named plaintiff's "injuries arise from the same events or course of conduct as do the injuries of the class and when [the] plaintiff['s] claims and those of the class are based on the same legal theory." *Glynn*, 2020 WL 6528072, at *3 (citation omitted). Here, like the rest of the class, the representative Plaintiff worked as a delivery driver at one of the Defendants' Domino's franchises, was paid hourly rates at or near the minimum wage, and was reimbursed for mileage at a rate that reduced his net wages to below the minimum wage. Compl. ¶¶ 7, 23–28. The Plaintiff's injuries arise from the Defendants' driver reimbursement policy, so the Plaintiff's and class claims are based on the same legal theory and the Plaintiff is typical of the class.

### d. Adequacy

The last Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc.*, 521 U.S. at 625–26 (citation and alteration omitted). The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent," and "factors in

7

competency and conflicts of class counsel." *Id.* at 625, 626 n.20. "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) (citation omitted). Here, the named Plaintiff shares the same interests—obtaining sufficient reimbursement for delivery drivers' delivery-related expenses—as the other members of the class. Further, there are no issues with class counsel competency or conflicts. *See* J. Forester Decl. (ECF No. 39-3.). The adequacy requirement is thus met.

### 2. Rule 23(b)

Once the Rule 23(a) prerequisites have been met, a certification-seeking plaintiff must demonstrate that common questions predominate over any individual questions, and that handling the matter as a class action is superior to other methods of resolving the controversy. Fed. R. Civ. P. 23(b)(3).

"Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003). Therefore, "[p]redominance is not defeated by individual damage questions as long as liability is still subject to common proof." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 28 (1st Cir. 2008).

In this case, the common issue is whether the Defendants' driving-expense reimbursement policy violates the FLSA and state wage laws. Even though the amount of damages due to each driver is an individual question, it can be determined

using the Defendants' records and applying objective criteria. Here objective criteria comprise the proposed formula based on total number of miles driven and reimbursements received. I find that common questions thus predominate over individual questions.

The next question is whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Non-exhaustive factors relevant to this determination include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.

*Id.*[2]

Applying these factors, I find that the class members do not have an interest in individually controlling separate actions and there is no other litigation already begun by these class members. Further, the case involves Maine wage claims so it makes sense to litigate in a Maine forum, and "class actions are uniquely superior in wage cases" which place workers in the uncomfortable position of suing their employers. *Venegas v. Glob. Aircraft Serv., Inc.*, 159 F. Supp. 3d 93, 105 (D. Me. 2016). Further, a class action gives the affected delivery drivers "the option of participating

---

[2] Because class certification is arising in the settlement context, I do not need to address the fourth factor relating to the likely difficulties in managing a class action. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1977) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." (citation omitted)).

9

by declining to opt-out, rather than affirmatively opting-in," which may allow them to "enjoy some degree of anonymity with their participation in this suit." *Id.* at 105–06. Accordingly, a class action is a superior method of resolving this dispute.

As noted above, the Defendants do not oppose class certification for the purpose of settlement only. For all these reasons, the proposed class—"all delivery drivers who worked for [Team Prior, Inc. d/b/a Domino's Pizza or Lee Prior] from October 4, 2013 to February 20, 2022"—is preliminarily certified for settlement purposes.

### III. The Proposed Settlement and Notice

Finally, the Plaintiff seeks (1) preliminary approval of the amended settlement agreement reached by the parties to resolve the delivery drivers' wage claims and (2) authorization to send notice of the settlement to the class. According to the Plaintiff, the parties "conferred extensively" to address the concerns outlined in my previous Order. Renewed Mot. 5. Still, I "must not simply rubber-stamp settlement agreements as approved." *O'Bryant v. ABC Phones of N.C., Inc.*, No. 2:19-CV-02378, 2020 WL 4493157, at *8 (W.D. Tenn. Aug. 4, 2020) (citation omitted). Instead, as I did with the parties' initial proposed settlement agreement, I review this settlement proposal to determine if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Here, this inquiry includes ensuring that the settlement proposal does not result in unjust or unfair settlements for the unnamed Rule 23 class members and appropriately accounts for the FLSA claims.

### A. Legal Standards

#### 1. Rule 23

Under Federal Rule of Civil Procedure 23(e), a two-step notice-then-approval procedural framework applies to proposed class settlements. At the first stage—notice to the class—the parties propose a settlement and provide the court with sufficient information to determine whether notice should be provided to all putative class members. The second stage—approval of the proposal—occurs after notice to all class members, a hearing, and a court determination that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The court must direct notice if "giving notice is justified by the parties' showing that the court will likely be able to" approve the settlement proposal and certify the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B).[3] "A proposed settlement of a class action may be given preliminary approval where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval." *Trombley v. Bank of Am. Corp.*, No. 08-cv-456-

---

[3] At the final approval stage, the court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

11

JD, 2011 WL 3273930, at *5 (D.R.I. July 29, 2011). "Court approval is necessary to 'protect unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise.'" *Glynn*, 2020 WL 6528072, at *10 (quoting *Amchem*, 521 U.S. at 623). However, "[i]f the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32–33 (1st Cir. 2009).

### 2. FLSA

"[I]n the FLSA context, for an employee's waiver of his rights to unpaid wages and liquidated damages to be binding, either the U.S. Secretary of Labor must supervise the settlement or a court must approve it." *Prescott v. Prudential Ins. Co. of Am.*, No. 2:09-CV-00322-DBH, 2011 WL 6662288, at *1 (D. Me. Dec. 20, 2011) (citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352–53 (11th Cir. 1982)). Part of the court's role is to assure that the FLSA is being properly applied and that the lawsuit is not being used as a device to discount employees' rightful claims. *Id.*

In order to approve a FLSA settlement, the court must determine that it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Curtis v. Scholarship Storage Inc.*, No. 2:14-CV-303-NT, 2016 WL 3072247, at *2 (D. Me. May 31, 2016) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1355). In addition, at least one named plaintiff must be willing to sign the agreement. *Michaud v. Monro Muffler Brake Inc.*, No. 2:12-cv-00353-NT, 2015 WL 1206490, at *9 (D. Me. March 17, 2015).

"The factors supporting approval of a Rule 23 settlement of state wage and hour claims may also support approval of a collective action settlement of FLSA claims." *Id.*[4]

### 3.  Hybrid Actions

In hybrid actions involving both a Rule 23 class action and a FLSA collective action—like this one—the settlement and release analysis is complicated by the different opt-in and opt-out procedures at play. *See Wyms v. Staffing Sols. Se., Inc.*, No. 15-cv-0643-MJR-PMF, 2016 WL 3682858, at *2 (S.D. Ill. July 12, 2016) (noting that "the release matter can get a bit tricky given the differences between the class and collective action mechanisms"). A Rule 23 class action operates as an opt-out system—class members who fail to opt out of the settlement typically receive their share of the recovery and release all their claims covered in the complaint. *Amchem*, 521 U.S. at 614–15. By contrast, in a collective action, litigants only release their FLSA claims by opting in to the case—if they do not affirmatively opt in, they retain their individual rights to sue in the future regardless of what happens to the federal wage claims in the collective action. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989).

Settlements in hybrid actions need to account for these differences by limiting the release in the settlement agreement and clearly explaining the options available to class and collective members in the notice. *See, e.g., Smith v. Kaiser Found. Hosps.*,

---

[4] "A court's review of a FLSA settlement, however, is slightly less demanding than its review of a Rule 23 class action settlement because, unlike a Rule 23 class action, a FLSA collective action settlement does not bind absent class members." *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *5 n.7 (D. Mass. Sept. 30, 2016).

No. 18cv780-KSC, 2020 WL 5064282, at *11–12, 17 (S.D. Cal. Aug. 26, 2020); *Howard v. Web.com Grp. Inc.*, No. CV-19-00513-PHX-DJH, 2020 WL 3827730, at *9–10 (D. Ariz. July 8, 2020); *Wyms*, 2016 WL 3682858, at *3. With hybrid action settlements, the fairness analysis involves reviewing both the settlement amount and the other terms of the settlement agreement, including the scope of any releases. *See Wyms*, 2016 WL 3682858, at *2.

### B.  Application

At this pre-fairness hearing stage, the Plaintiff has demonstrated that preliminary approval of the proposed settlement and authorization of the proposed class notice of settlement are warranted for the following reasons:[5]

First, the revised settlement proposal was achieved after the parties' exchange of class-wide discovery of the Defendants' payroll and reimbursement data and financial information. The settlement was negotiated at arm's length and looks to be the result of several rounds of serious and informed negotiations, including the months of renewed settlement discussions following my earlier denial. These efforts further suggest that the class representative and class counsel are adequately representing the class. *See* Fed. R. Civ. P. 23(e)(2)(A). The parties have remedied all the deficiencies I previously identified, and I see no grounds to doubt the fairness of the revised settlement. Indeed, as discussed in more detail below, the parties made significant alterations to the proposed settlement structure to address my earlier

---

[5]  I am also likely, for the reasons stated earlier, to certify the class for purposes of judgment on the settlement proposal. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii).

concerns, including by clarifying the differing FLSA and class claims, simplifying the claims structure by eliminating the various rounds and separate funds, and providing for distribution of the entire net settlement amount through use of a "claims-made floor." Further, the negotiated settlement award of $250,000 appears to fall within the range of possible approval as the Plaintiff estimates that it is roughly equivalent to a recovery of likely damages greater than thirty percent, and each class member will receive a *pro rata* portion of the settlement based on the driver's recorded delivery miles, with a minimum payment of $25. The settlement proposal now appears to treat class members, and opt-in FLSA collective members, equitably in relation to one another, and I likely will be able to find that the proposed method of distributing relief to the class set forth in the amended settlement agreement is fair and adequate. Likewise, the proposed award of attorneys' fees, which will not exceed $80,000, also seems reasonable. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 842 F. Supp. 2d 346, 350 (D. Me. 2012) (approving as reasonable attorneys' fees and expenses amounting to 30% of the class settlement amounts). Finally, taking into account all of the above plus the prospect of lengthy additional litigation if settlement had not been reached, including the costs and risks to class members if the case proceeded to trial, I will likely find that the proposed relief is a fair and adequate resolution of this case.

In addition, the amended settlement represents a fair and reasonable resolution of a bona fide dispute over FLSA provisions. It also accounts for the differences between the FLSA opt-in claims and the class opt-out structure by

distinguishing and limiting the scope of the releases and tying the drivers' potential recovery to their respective releases. Class members who do not opt out will release only their state wage claims and receive the minimum settlement payment, but class members who also opt into the FLSA collective and release both their state and federal wage claims will receive—in exchange for the broader release—a *pro rata* share of the fund based on their miles, with the average settlement amount expected to exceed $500. The proposed notice clearly explains these options that are available to class and collective members. Given all of this, I presume the settlement is fair, adequate, and reasonable, and that preliminary approval and notice to the class is now justified.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiff's renewed motion. The settlement class is provisionally certified for settlement purposes only, and the proposed class notice of settlement attached to this order is approved. The clerk is directed to schedule a final approval hearing.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 19th day of April, 2022.