# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| CONNOR ANDERSON, individually and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>TEAM PRIOR, INC. and LEE PRIOR<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Docket No. 2:19-cv-00452-NT<br>)<br>)<br>)<br>)<br>) |

## ORDER ON PLAINTIFF'S UNOPPOSED MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Before me is the Plaintiff's motion for final approval of the parties' settlement agreement. Unopposed Mot. for Final Approval of Settlement Agreement (ECF No. 50). A final fairness hearing was held on September 20, 2022, and no class members have objected to the parties' settlement. For the reasons stated below, the motion is **GRANTED**.

## BACKGROUND

This is a wage and hour lawsuit brought on behalf of pizza delivery drivers who worked at certain Domino's Pizza stores. Plaintiff Connor Anderson filed this lawsuit as a collective and class action on October 4, 2019 against Defendants Team Prior, Inc. and Lee Prior, who own numerous Domino's franchises in Maine and Connecticut. *See* Compl. (ECF No. 1); Second Am. Compl. ("**Compl.**") (ECF No. 43) ¶¶ 1, 8. The Plaintiff's primary claim is that the Defendants paid delivery drivers at or close to minimum wage and, at the same time, required delivery drivers to pay for

their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc., but failed to sufficiently reimburse the drivers for these costs. The Plaintiff claims that the Defendants' reimbursement practices resulted in a violation of the Fair Labor Standards Act ("FLSA"), the Connecticut Minimum Wage Act, and the Maine Minimum Wage Law.[1] The Defendants deny the Plaintiff's claims and believe that they paid and reimbursed their delivery drivers properly. The Defendants also deny that the Plaintiff's claims are proper for class or collective action treatment, except for purposes of settlement.

At the parties' request, the action was stayed in January of 2020 so the parties could explore settlement through mediation. Joint Mot. to Stay Pending Mediation (ECF No. 7); Order (ECF No. 8). After I conditionally certified the case as a collective action in March of 2020, *see* Order (ECF No. 22), notice was sent to all current and former delivery drivers employed by the Defendants in the prior three years, and fifty-six drivers then opted in as plaintiffs to the lawsuit by returning consent forms, *see* Consents (ECF Nos. 10, 24–25).

On February 18, 2020, the parties participated in a full-day mediation with Adam Saravay, a mediator with experience in wage and hour disputes. *See* Joint Status Report (ECF No. 9). Although mediation that day was unsuccessful, the parties later reached a settlement. Joint Notice of Settlement (ECF No. 30). After

---

[1] Additional background on the Plaintiff's claims can be found in my Order on Joint Motion to Reinstate Case, for Preliminary Approval of Settlement Agreement, and Associated Relief ("**Order Denying Prelim. Approval**") (ECF No. 34).

2

additional direction from the Court[2] on their first motion for preliminary approval of their settlement agreement, the parties agreed on the amended Settlement Agreement now before me. *See* Settlement and Release Agreement ("**Settlement Agreement**") (ECF No. 50-1; previously filed at ECF No. 39-1). On April 19, 2022, I preliminarily approved the parties' settlement, provisionally certified the class for settlement purposes, and authorized the settlement notice to be sent to the class. Order on Pl.'s Renewed Mot. for Prelim. Approval of Settlement Agreement and for Leave to File Am. Compl. ("**Prelim. Approval Order**") (ECF No. 40).

The parties' Settlement Agreement provides for a Total Settlement Amount of $250,000. From that total, the Claims Administrator, CAC Services Group, LLC, will be paid $15,000 for costs incurred in administering the settlement, including mailing notices, forwarding return notices, processing claim forms, mailing individual checks, and related efforts. The named Plaintiff and class representative, Connor Anderson, will receive a $5,000 service payment in recognition of the work involved and benefits he achieved on behalf of the class. In exchange for this service payment, Mr. Anderson agreed to an additional general release of claims. The Settlement Agreement provides that class counsel will receive $80,000 for attorneys' fees and litigation costs and expenses.

After deducting these administration costs, attorneys' fees, litigation expenses, and the service award for the named Plaintiff, class members will each receive a *pro rata* share of the remaining $150,000 Net Settlement Fund. Class members' shares are based

---

[2]    *See* Order Denying Prelim. Approval.

on (1) whether they previously submitted a consent to join this matter, (2) whether they submitted a claim form to opt in to this lawsuit during the settlement notice period, and (3) the number of miles they drove during the class period. Of the Net Settlement Fund, $111,200 has been allocated for those 222 class members that opted in through the FLSA's procedures, either through the initial notice round or during the settlement notice round, and those funds will be distributed on a *pro rata* basis, based on the miles driven by each of these individuals, in accordance with the Settlement Agreement. In exchange for their settlement payments, these drivers release both their FLSA claims and their state law claims. The class members who received notice of the settlement and chose to neither opt in nor opt out of the settlement will receive an average minimum payment of $25.00, totaling $23,800 of the Net Settlement Fund. In exchange for their minimum settlement payments, these drivers release only their state law claims and do not release any federal claims.³ An additional $15,000 will be held in a  , and class

---

3   The Settlement Agreement provides for the following release:
    Upon the Effective Date of the Settlement, the Class Representative and Settlement Class Members will release and forever discharge Defendants, and each of their former and present predecessors, successors, parents, subsidiaries, franchisors, insurers, attorneys and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, attorneys and agents (including Lee Prior, Dale Prior and Amanda Prior) and any other successors, assigns, or legal representatives ("Released Parties"), from any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, accruing during the Class Period, including claims that arise under the Connecticut Minimum Wage Act, C.G.S. Title 31 Chapter 558, the Maine Minimum Wage Law, Me. Rev. Stat. Ann. tit. 26, §§ 673 to 661 *et seq.*, and any similar state, municipal, or local laws, which arise out of, are based on, or encompass facts asserted in the Action, including claims such as expense reimbursement claims; meal and rest break claims; dual job/80-20 claims; tip credit claims; and notification, posting and record claims; and/or any related claims for liquidated damages, penalties, attorneys' fees and costs, penalties and interest; any and all common law and equitable claims (including claims for breach of contract, unjust enrichment, quantum meruit, etc.); and any and all derivative claims relating to unpaid wages, minimum wage compensation or overtime ("Released Claims"). Additionally, the Class Representative, Opt-in Plaintiffs, and any Participating Class

members remain eligible to submit a claim for up to the full amount of their *pro rata* share through the Contingent Fund. Any unclaimed amounts in the Contingent Fund as of February 20, 2025 will be distributed back to the Defendants.

## DISCUSSION

### I.     Certification

Before addressing the parties' settlement, I must determine whether the proposed class is appropriate for final certification for settlement purposes. The settlement class is defined as: "All persons who worked as delivery drivers for Team Prior Inc. at Domino's Pizza stores at any time during the period October 4, 2013 to February 20, 2022." For the following reasons, I now certify this settlement class under both Rule 23 of the Federal Rules of Civil Procedure and § 216(b) of the FLSA.

### A.     Rule 23

The claims of a class proposed to be certified for purposes of settlement may be settled "only with the court's approval." Fed. R. Civ. P. 23(e). A class proposed to be certified for settlement purposes must meet the class action requirements prescribed in Rule 23(a) and (b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–22 (1997). The Rule 23(a) requirements are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

Member who files a valid Claim Form, including Late Claimants, shall release any claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq.* Settlement and Release Agreement (ECF No. 50-1).

Fed. R. Civ. P. 23(a). Next, the named plaintiff must show that the class falls under one of the types of class actions described in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 345 (2011). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' " *Amchem Prods.,* 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3)).

I discussed the Rule 23(a) requirements—numerosity, commonality, typicality, and adequacy of representation—in my April Order granting preliminary approval. *See* Prelim. Approval Order. I concluded that the proposed settlement class met all four requirements. I also found that the settlement class satisfied Rule 23(b)(3)'s predominance and superiority requirements. Nothing has changed since my earlier determination so further analysis is unnecessary, and the settlement class is certified for purposes of settlement under Rule 23.

**B.   FLSA**

Unlike a Rule 23 class action, collective actions under the FLSA "require similarly situated employees to affirmatively opt-in and be bound by any judgment." *Brayak v. New Bos. Pie, Inc.*, 292 F. Supp. 3d 520, 523 (D. Mass. 2017) (quoting *Pike v. New Generation Donuts, LLC*, No. 12-12226, 2016 WL 707361, at *3 (D. Mass. Feb. 20, 2016)). Plaintiffs seeking certification of a FLSA collective action must demonstrate that employees are "similarly situated." *See* 29 U.S.C. § 216(b). Generally, employees are "similarly situated" when they "have similar (not identical)

6

job duties and pay provisions, and are 'victims of a common policy or plan that violated the law.'" *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010) (citations omitted).

Although the First Circuit has not prescribed a specific procedure, most district courts in this circuit, including this one, employ a "two-tiered" approach in determining FLSA collective action certification. *See, e.g.*, *Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 233 (D. Me. 2011). First, the court "determines whether notice should be given to potential collective action members." *Id.* at 233–34 (citations omitted). To pass this first step, a plaintiff must simply demonstrate "a reasonable basis for [his] claim that there are other similarly situated employees." *Prescott*, 729 F. Supp. 2d at 364 (citations omitted). Here, the first step was completed when the parties stipulated to conditional certification and I approved their notice of collective action and determined that notice should be given to potential collective action members—similarly situated employees at the Defendants' Domino's stores. *See* Order Granting Mot. to Approve Form of Notice of Collective Action (ECF No. 22).

We are now at the second step, when the court makes "a factual determination as to whether there are similarly-situated employees who have opted in." *Johnson*, 802 F. Supp. 2d at 234 (quoting *Prescott*, 729 F. Supp. 2d at 364). An action does not become a collective action "unless other plaintiffs affirmatively opt into the class by giving written and filed consent, and the trial court certifies that such opt-in plaintiffs are in fact similarly situated and that the collective action is procedurally manageable and fair." *Perez v. Shucks Me. Lobster LLC*, No. 2:15-cv-00348-JAW, 2016

7

WL 6304674, at *6 (D. Me. Oct. 27, 2016) (citations omitted). Here, 222 employees have affirmatively opted into the collective by filing written consents. I find that these opt-in plaintiffs are similarly situated to the named Plaintiff as they were all delivery drivers for the Defendants' Domino's stores in the three years prior to the FLSA notice, and they would have been subjected to the same reimbursement policy that the Plaintiff alleges violates the FLSA. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1116 (9th Cir. 2018) ("A systemic policy is no less common across the collective if those subject to it are affected at different times, at different places, in different ways, or to different degrees."). I further find, as I determined with respect to the class action, that the collective action is fair and procedurally manageable. Therefore, certification of the FLSA opt-in collective is warranted.

## II. Settlement Approval

### A. Rule 23(e)

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may approve a class settlement proposal "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, I consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

8

>    >    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>    >    (iv) any agreement required to be identified under Rule 23(e)(3); and
>    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "Court approval is necessary to 'protect unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise.' " *Glynn v. Maine Oxy-Acetylene Supply Co.*, No. 2:19-cv-00176-NT, 2020 WL 6528072, at \*10 (D. Me. Nov. 5, 2020) (quoting *Amchem Prods.*, 521 U.S. at 623).

I held a final fairness hearing on September 20, 2022. No class member appeared to object, and no written objections or exclusions have been filed. At the hearing, I questioned counsel for both sides so that I could determine whether the proposed settlement is in fact fair, reasonable, and adequate. Based on the hearing and the parties' submissions, I make the following findings and conclusions.

The parties' settlement was achieved after months of arm's-length negotiations by experienced counsel. These negotiations followed an exchange of informal discovery of class-wide data and a full-day mediation session with a well-respected mediator experienced in wage-and-hour matters. Moreover, the parties substantially renegotiated and modified aspects of the original settlement agreement after receiving my input during the preliminary approval process. Accordingly, I find that the settlement is the product of fair arm's-length negotiations, and that the class representative and class counsel have adequately represented the class throughout.

I also examined the strengths and weaknesses of the case, including the class members' claims and the defenses available to Defendants, and I believe the relief the settlement affords the class members is adequate and reasonable because the settlement achieves a significant benefit for the named Plaintiff and the class members in the face of substantial litigation obstacles. While there is a possibility that the class could recover more money after trial and appeal, the Settlement Agreement provides the benefit of a guaranteed and considerable payment to class members, rather than a speculative payment of a hypothetically larger amount years down the road. The risks and costs of protracted litigation and uncertainty surrounding class members' ability to recover are not insignificant. Counsel for the Defendants highlighted several issues and defenses relating to the inadequate reimbursement claims, and pointed to similar cases that have been proceeding in the courts for more than five years and still have not passed the class certification stage. The parties estimate that a trial on the merits in this case would take weeks. They further represent that protracted litigation could bankrupt the Defendants. Based on all that, the Court finds that the benefit of immediate recovery provided for in the Parties' Settlement Agreement outweighs the possibility of future greater relief.

Finally, the fact that no class members objected to the settlement nor requested exclusion after receiving notice suggests that the response to the proposed settlement has been positive. This is further evidence that the Settlement Agreement is fair, adequate, and reasonable.

### B.     FLSA

Likewise, "in the FLSA context, for an employee's waiver of his rights to unpaid wages and liquidated damages to be binding, . . . a court must approve it." *Prescott v. Prudential Ins. Co.*, 2:09-cv-00322-DBH, 2011 WL 6662288, at *1 (D. Me. Dec. 20, 2011) (citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352–53 (11th Cir. 1982)). Part of the court's "role is to assure that the FLSA is being properly applied and that the lawsuit is not being used as a device to discount employees' rightful claims." *Id.* In order to approve a FLSA settlement, the court must determine that it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Curtis v. Scholarship Storage Inc.*, No. 2:14-cv-303-NT, 2016 WL 3072247, at *2 (D. Me. May 31, 2016) (quoting *Lynn's Food Stores*, 679 F.2d at 1355). In addition, at least one named plaintiff must be willing to sign the agreement. *Michaud v. Monro Muffler Brake, Inc.*, No. 2:12-cv-00353-NT, 2015 WL 1206490, at *9 (D. Me. Mar. 17, 2015). "The factors supporting approval of a Rule 23 settlement of state wage and hour claims may also support approval of a collective action settlement of FLSA claims." *Id.*[4]

---

[4]     "A court's review of a FLSA settlement, however, is slightly less demanding than its review of a Rule 23 class action settlement because, unlike a Rule 23 class action, a FLSA collective action settlement does not bind absent class members." *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *5 n.7 (D. Mass. Sept. 30, 2016).
     I am also aware that a growing number of federal courts are rejecting *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982), and holding that court approval of private FLSA settlements is not necessary. *See Askew v. Inter-Cont'l Hotels Corp.*, No. 5:19-cv-24-BJB, 2022 WL 3161927 (W.D. Ky. Aug. 8, 2022); *Alcantara v. Duran Landscaping*, No. 2:21-cv-03947, 2022 WL 2703610 (E.D. Pa. July 12, 2022). But because the First Circuit has not weighed in on this trend, this Court has previously endorsed the reasoning of *Lynn's Food Stores*, and the parties in this case have requested approval of their settlement, I proceed with a FLSA approval analysis.

11

Here, I find that the settlement is a reasonable compromise of a bona fide dispute of the claims and defenses in this matter. Two hundred twenty-two employees, approximately nineteen percent of the noticed class, opted into the FLSA settlement, and will receive *pro rata* payments based on the number of miles they drove for the Defendants. These opt-in plaintiffs receive a share of the larger settlement fund, totaling $111,200, in exchange for releasing their FLSA claims along with their state wage claims.[5] Class counsel represents that this equates to a recovery of more than seventy percent of their claimed unliquidated damages. In addition, absent class members—including those who may have been high-miles drivers like the named Plaintiff and so would be entitled to significant settlement awards—are still afforded the chance to come forward, opt in (until February 2025), and receive their *pro rata* share based on miles out of the Contingent Fund. Considering the litigation risks the FLSA collective would face at trial, the opt-in Plaintiffs' recovery under the Settlement Agreement is fair and reasonable.

### C. Other Considerations

As part of the settlement, counsel for the Plaintiff also asks me to approve an attorneys' fees and costs award totaling $80,000. *See* 29 U.S.C. § 216(b) ("The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The requested attorneys' fees and costs are approximately thirty percent of the total

---

[5] By contrast, the class members who did not opt in and thus receive the $25 minimum payment only release their state law claims. They are still free to pursue FLSA claims on their own.

12

settlement amount, and neither the Defendants nor any class member have objected to the request. Because the request is reasonable—and is in fact below the forty percent allowed by class counsel's contingency agreement with the Plaintiff—and is in line with fee-and-cost awards in similar actions, I approve.

I likewise approve the service award of $5,000 to be paid to the named Plaintiff, Connor Anderson. He played an active role advocating for his fellow delivery drivers and provided valuable insight to class counsel throughout the case, and his efforts resulted in substantial payments to the class. The Plaintiff's request for a total of $5,000 in service awards is thus reasonable and warranted.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Plaintiff's renewed motion. It is therefore **ORDERED**:

1. For the purpose of this settlement, the Court finally certifies the collective action pursuant to Section 216(b) of the FLSA and the class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2. For the purpose of this settlement, the Court finds that:

    a. The requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied, and a class action is an appropriate method for resolving the disputes in this litigation.

    b. The class members are ascertainable and too numerous to be joined. For purposes of settlement, there are questions of law and fact common to all class members, these issues predominate over individual issues, and should be determined in one proceeding with respect to all class members.

    c. This class action is appropriate and the superior mechanism for adjudicating and resolving this action.

    d. The settlement is a reasonable compromise of a bona fide dispute of the claims and defenses in this matter and, there is nothing in the record to

       suggest that the settlement would otherwise frustrate the implementation of the FLSA.

3. The Defendants have complied with all their obligations pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, with respect to this class action settlement.

4. The Court finds that a total settlement amount of $250,000.00 is a fair compromise of highly contested claims, will provide the settlement class members with adequate compensation for their claims in this case, given the contested nature of the claims, the complexity of issues involved, the assurance of relief for the class members, and the benefit of obtaining such relief in light of the costs, risks, and delay of trial and appeal, and is approved. Pursuant to the terms of the Settlement Agreement, this amount is to be distributed as follows:

   a. The costs of the Settlement Claims Administrator are approved in the amount of $15,000.00.

   b. The proposed service payment to the class representative is approved in the amount of $5,000.00.

   c. The payment of attorneys' fees to class counsel and reimbursement of class counsel's actual costs and litigation expenses is approved in a total amount of $80,000.00.

   d. The individuals that opted in to this matter will be allocated $111,200.00 of the Net Settlement Fund that will be distributed to these individuals on a pro rata basis, based primarily on the miles driven by each of these individuals, and in accordance with the Settlement Agreement.

   e. Each of the remaining individuals that received notice of the settlement and chose to neither opt in nor opt out of the settlement will receive an average minimum payment of $25.00, totaling $23,800.00 of the Net Settlement Fund, in exchange for release of their state law claims but without releasing any federal claims.

   f. No less than $15,000.00 will be held in the Contingent Fund. This amount will be further supplemented by unclaimed funds. Under the terms of the Settlement Agreement, all settlement class members who have neither excluded themselves from the settlement nor opted in to the FLSA settlement remain eligible to submit a claim for up to the full amount of their pro rata share from this fund through February 20, 2025.

14

    g. The settlement class members are enjoined during the applicable release period from prosecuting against the Defendants and the released parties those claims, whether state, FLSA, or both, that the settlement class members have released.

    h. The named Plaintiff is enjoined during the applicable release period from prosecuting against the Defendants and the released parties any and all of the named Plaintiff's released claims.

5. The Litigation is DISMISSED with prejudice in accordance with the terms of the Settlement Agreement. The Court retains continuing jurisdiction over the action to enforce, interpret, and otherwise implement the settlement and the Settlement Agreement.

SO ORDERED.

                                              /s/ Nancy Torresen  
                                              United States District Judge

Dated this 28th day of October, 2022.